## MASON COUNTY CIVIC RESEARCH COUNCIL
### *v.* MASON COUNTY.

1. COUNTIES—BOARD OF SUPERVISORS—POWERS.

   A county board of supervisors has no inherent powers when considered as an administrative body, the Constitution declaring that it shall have "such powers as shall be prescribed by law" (Const 1908, art 8, § 7).

2. SAME—ERECTION OF INFIRMARY—ADMINISTRATIVE POWER.

   Declaration in statute conferring upon a county board of supervisors power to erect a county infirmary in a county "in which a county infirmary is not already erected" implied that the legislature intended to grant administrative authority, rather than powers of a local legislative character (Const 1908, art 8, § 7; CL 1948, § 402.6).

3. SAME—BOARD OF SUPERVISORS—CHOICE OF SITES FOR COUNTY BUILDINGS.

   A provision in a statute restricting power granted to boards of supervisors "to fix upon and determine the site of any such

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 10] 14 Am Jur, Counties § 28.
[4, 5] 42 Am Jur, Public Administrative Law § 26.
[7-9] 50 Am Jur, Statutes § 225 *et seq.*
[11] 50 Am Jur, Statutes §§ 303-308.
[12] 50 Am Jur, Statutes §§ 223, 247.
[13] 50 Am Jur, Statutes § 358.
[14] 50 Am Jur, Statutes § 225.
[15] 28 Am Jur, Injunctions § 61 *et seq.*
[16] 14 Am Jur, Costs § 35.

building, if not previously located" applies to both preceding subdivisions of statute (1) relative to "erection of buildings for the support of the poor of such county" and (2) "for the site of any courthouse, jail, clerk's office, or any other county building in such county," in the absence of language limiting the restriction to the second clause and especially in view of similar restrictive language in statute giving board of supervisors certain powers in connection with erection of county infirmary (CL 1948, §§ 46.11, 402.6).

4. ADMINISTRATIVE LAW—EXPRESS GRANTS OF POWER—CONSTRUCTION OF STATUTES.

An express grant of power to administrative officers, boards or commissions, is subject to a strict interpretation.

5. SAME—DOUBTFUL POWERS.

The power and authority to be exercised by administrative boards or commissions must be conferred by clear and unmistakable language, since a doubtful power does not exist.

6. OFFICERS—MEASURE OF AUTHORITY.

The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority.

7. STATUTES—CONSTRUCTION.

Whether or not the remodeling of an existing structure may be regarded as within the term "erected" or the equivalent of erecting, building, or constructing, is not determined where unnecessary to decision in case involving the construction of a statute.

8. SAME—CONSTRUCTION OF STATUTES—"ERECTED" CONSTRUED AS "ESTABLISHED."

The term "erected" in statutory provision authorizing a county board of supervisors to erect a county infirmary in a county "in which a county infirmary is not already erected" in the context used, was intended to mean "established," since there must be facilities supplied to the end that the inmates may receive proper care (CL 1948, § 402.6).

9. WORDS AND PHRASES—ERECT—ESTABLISH.

The word "erected" may properly mean more than just the term "to build," if the context requires that it be construed as "to set up" or to "establish."

10. COUNTIES—INFIRMARIES—CHANGE OF SITES—"ERECTED" CONSTRUED AS "ESTABLISHED."

A board of supervisors may not select a new site for the county

infirmary, where previously its infirmary had been established by the purchase of a convalescent home and the remodeling thereof for use as an infirmary, the provision restricting the board as to change of sites where an infirmary had been "erected," such term being construed as "established" (CL 1948, § 402.6).

11. STATUTES—CONSTRUCTION.

The courts are not concerned with the wisdom or policy of legislation, but must construe statutes as enacted, in the light of the purpose to be accomplished and giving due and proper meaning to all provisions.

12. SAME—INTENT.

It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction, or attempted interpretation to vary such meaning.

13. SAME—CONSTRUCTION—EFFECT GIVEN TO EVERY WORD.

Effect must be given, if possible, to every word, sentence and section when construing a statute to produce a harmonious and consistent enactment as a whole.

14. SAME—CONSTRUCTION—CLEAR LANGUAGE.

A court may not alter or change the clear, distinct and unequivocal wording of a legislative enactment.

15. INJUNCTION—QUESTIONS REVIEWABLE—ACQUIESCENCE.

The legality of the establishment of county infirmary at its present site some 13 years ago may not be questioned in proceedings instituted to enjoin the county from erecting a new infirmary on other land given to it by a municipality within the county, where it appears that all parties involved had acquiesced in the earlier action taken.

16. COSTS—INJUNCTION—CONSTRUCTION OF STATUTES.

No costs are allowed in suit to enjoin county from changing site of county infirmary in county which had previously established such institution at its present location, a question of statutory construction being involved (Const 1908, art 8, § 7; CL 1948, §§ 46.11, 402.6).

BUTZEL, SMITH, and BOYLES, JJ., dissenting.

Appeal from Mason; Elliott (Philip), J., presiding. Submitted April 5, 1955. (Docket No. 18, Calendar No. 46,423.) Decided October 3, 1955. Rehearing denied December 1, 1955.

Bill by Mason County Civic Research Council, a voluntary taxpayers' association, against County of Mason and City of Scottville, municipal corporations, to restrain transfer of property by city to county for purposes of infirmary. Bill dismissed. Plaintiff appeals. Reversed.

*Eugene Christman,* for plaintiff.

*Vernon Keiser* and *Hathaway, Latimer, Clink & Robb* (*H. Winston Hathaway,* of counsel), for defendant County of Mason.

*William W. Stapleton* and *H. Winston Hathaway,* for defendant County of Mason on application for rehearing.

*Hathaway, Latimer, Clink & Robb* (*H. Winston Hathaway,* of counsel), for defendant city of Scottville.

BOYLES, J. (*dissenting*). Plaintiff, consisting of certain residents and taxpayers of the city of Ludington in Mason county, filed the bill of complaint in this case to enjoin the defendants from proceeding with the proposed construction of a county infirmary in the city of Scottville in said county. These taxpayers adopted the designation Mason County Civic Research Council. The defendants are the county of Mason and the city of Scottville. The trial court, after a hearing on stipulated facts, filed a comprehensive written opinion and entered an order dismissing the bill of complaint. Plaintiff appeals.

Two principal questions are here for decision: (1) Does the board of supervisors of Mason county have authority to erect a county convalescent home and infirmary building at the proposed location in Scottville; and (2) does the city of Scottville have authority to deed to the county the parcel of land

on which the building is to be located. Appellant adds a third incidental question, involving the right of the board of supervisors to use county sinking funds to erect an infirmary.

· The facts have been stipulated. In 1942 the county acquired and has since maintained a place in Ludington as an infirmary, under the name of Mason County Convalescent Home, and under the management and control of the county social welfare board.[1] In 1949, by a vote of the electors in said county, a county sinking fund was created and taxes voted for the purpose of constructing a new county jail and a new county convalescent home.[2] No action has been taken by the county sinking fund commission[3] to allocate or use the fund. In 1952 the board of supervisors authorized its building committee to procure plans for a new jail and a new convalescent home or infirmary, which was done. Also, in 1952, the electors of the county voted favorably for a bond issue of $165,000 for the purpose of constructing and equipping "a new county convalescent home (infirmary)." In 1953 the city of Scottville offered to deed to the county approximately 3 acres of land out of an 18-acre park known as McPhail Field, as the site for the proposed new "county convalescent hospital (infirmary)." The board of supervisors voted to accept the offer, subject to providing a merchantable title.[4] In June, 1953, the county prosecuting attorney gave the board of supervisors a written opinion approving the title to the Scottville site, and the board of supervisors adopted a resolution "accepting the proposed Scottville site and approving the construction of the infirmary in accord-

---

[1] See CLS 1954, § 400.55(c) (Stat Ann 1953 Cum Supp § 16.455 [c]).
[2] See CL 1948, § 141.51 (Stat Ann § 5.671).
[3] See CL 1948, § 141.31 et seq. (Stat Ann § 5.651 et seq.).
[4] Reference will be made later to a claim of defect in the title which the city might convey to the county.

ance with the plans and specifications prepared by the architect upon the site in the city of Scottville."

In July, 1953, the plaintiff Mason County Civic Research Council filed the instant bill of complaint seeking temporary and permanent injunctions to restrain the city of Scottville from conveying the proposed site to the county, and to restrain the county from further proceeding with the plan for the construction of the proposed county infirmary in Scottville. Plaintiff appeals from the dismissal, by the trial court, of its bill of complaint.

1. Does the county board of supervisors have authority to erect a county infirmary at Scottville, under the facts in the case?

The applicable constitutional and statutory provisions are as follows:

"Each county may also maintain an infirmary for the care and support of its indigent poor and unfortunate, and all county poor houses shall hereafter be designated and maintained as county infirmaries." Const (1908), art 8, § 11.

"The board of supervisors of any county in this State in which a county infirmary is not already erected, may, at any annual or special meeting thereof, determine to erect such a house for the reception of the poor of their county." CL 1948, § 402.6 (Stat Ann 1950 Rev § 16.147).

"The said several boards of supervisors shall have power and they are hereby authorized at any meeting thereof lawfully held:

"First, To purchase for the use of the county any real estate necessary for the erection of buildings for the support of the poor of such county, and for a farm to be used in connection therewith;

"Second, To purchase any real estate necessary for the site of any court house, jail, clerk's office, or any other county building in such county;

"Third, To fix upon and determine the site of any such building, if not previously located; * * *

"Fifth, To remove or designate a new site for any county buildings required to be at the county seats, when such removal shall not exceed the limits of the village or city at which the county seat is situated, as previously located;

"Sixth, To cause to be erected the necessary buildings for poorhouses, jails, clerk's offices, and other county buildings, and to prescribe the time and manner of erecting the same." CL 1948, § 46.11 (Stat Ann 1953 Cum Supp § 5.331).

Plaintiff mainly relies on the language in the first sentence of CL 1948, § 402.6 (Stat Ann 1950 Rev § 16.147), *supra,* authorizing the board of supervisors to erect a county infirmary in any county "in which a county infirmary is not already erected." Plaintiff claims that a county *infirmary* has already been *erected* in Ludington, hence, the county has no authority to change the location and "erect" an infirmary in Scottville. The legislative intent may readily be gathered from the ensuing provisions in the same act, as well as in the other acts above referred to. Obviously, there was no legislative intent that once a county infirmary had been "erected" in a certain place, the county must be limited in perpetuity to that one location for an infirmary. In fact, the record here shows that the Mason county infirmary was originally located in Amber township, which farm site was disposed of when the infirmary was relocated (apparently in conjunction with a "county convalescent home") in a large former residence building in Ludington. Under plaintiff's theory, the farm site would be the only lawful place for a county infirmary. There is no merit in appellant's claim that the board of supervisors may not acquire a different site for the infirmary.

"The board of supervisors of the county have exclusive authority over the subject of the erection of houses for the reception of the poor of their county,

and in the exercise of this authority they may employ such agents as they choose to execute what they have determined upon to do." *Plummer* v. *Kennedy,* 72 Mich 295, 300.*

2. Does the city of Scottville have the right to convey to the county a part of the so-called McPhail park in Scottville?

This 18-acre tract was acquired by the city in 1925 by gift from Curtis W. McPhail, the conveyance stating:

"This deed is made and executed by said first parties with the agreement and understanding that the land above conveyed is to be used for a public park and for no other purpose; except that such a portion as is necessary for an athletic field may be enclosed for such purpose."

The city, anticipating in an excess of caution a possible claim that this entire 18-acre tract would have to be held by the city in perpetuity as a public park, cleared the title from the possibility by other claimants of an interest in the title. It should be noted that the conveyance from McPhail to the city did not contain a reverter clause, and was not expressly made subject to reversionary interests. When McPhail died testate in 1939 he devised the residue of his estate (which would include any possible interest in the park) to 2 churches, both of which have executed deeds to the city releasing any restrictions or right to the park property. Also, all of McPhail's heirs have joined in a similar deed to the city, reciting that it was given for the same purpose. The city council of Scottville took formal action vacating the park as to the 3-acre parcel and authorizing the conveyance to the county for an

---

* This must now be qualified by a later requirement in CL 1948, § 402.6 (Stat Ann 1950 Rev § 16.147), that before a county infirmary is erected, the plans must be approved by the State department of welfare, which has been done in this case.

infirmary site. In effect, plaintiff would insist that once a parcel of land had been conveyed to a municipality for a park, without a reverter or reversionary clause, it must be held forever by the city as a park. In *Briggs* v. *City of Grand Rapids,* 261 Mich 11, we held (syllabus):

"Where there was no reverter clause, statement in deed to city for valuable consideration that land was purchased for park purposes is merely declaration of purpose of conveyance, without effect to limit grant, and therefore city was under no obligation to maintain park in perpetuity."

"It seems to be the weight of authority that, where there is no reverter clause, a statement of use is merely a declaration of the purpose of conveyance, without effect to limit the grant." *Quinn* v. *Pere Marquette Railway Co.,* 256 Mich 143, 151.

Furthermore, the city council took formal action vacating for park purposes the 3-acre parcel to be conveyed to the county. It had statutory authority to do so. CL 1948, § 100.3 (Stat Ann 1949 Rev § 5.1787). The city of Scottville had authority to convey the 3-acre site to the county.

Finally, appellant asks whether the board of supervisors has the right to "ignore" the county board of sinking fund commissioners and order the construction of a county infirmary partly out of sinking funds. Nothing here in the record indicates that the board of supervisors will fail to recognize any statutory authority of the board of sinking fund commissioners. It consists of the county treasurer, county clerk, register of deeds, chairman of the board of supervisors, and chairman of the finance committee of that board.* By statute, the sinking fund is under the control of said board of county sinking fund commissioners, "subject to the supervision and direction

---

* CL 1948, § 141.32 (Stat Ann § 5.652).

of the board of supervisors."* We are in accord with the thorough opinion of the trial court, which is in the record, indicating that the board of supervisors, if it desires to use sinking fund moneys, should have no difficulty in "directing" the sinking fund commissioners.

This opinion is based upon an analysis of the *statutory* powers conferred upon *boards* of supervisors by the legislature. The Michigan Constitution (1908)† provides:

"The legislature may by general law confer upon the boards of supervisors of the several counties such powers of a local, *legislative* and administrative character, not inconsistent with the provisions of this Constitution, as it may deem proper." (Italics supplied.)

It has been argued that boards of supervisors are *administrative* agencies, lacking authority to change the site of a county infirmary. A board of supervisors is the legislative agency of the county, and if it lacks that authority, obviously it must follow, if existing law is as now argued by appellant, that the location of a county infirmary must remain, perhaps in perpetuity, as originally located, unless further authorized by the legislature.

In some instances the Constitution itself has plainly defined the location of certain county agencies. Article 8, § 13, forbids a change in the location of the county seat of government, once it has been established, until the change in location has been approved by a majority vote of the electors. Article 8, § 4, requires that the sheriff, county clerk, county treasurer, judge of probate and register of deeds "shall hold their offices at the county seat." Sig-

---

* CL 1948, § 141.55 (Stat Ann § 5.675).
† Art 8, § 8.

nificantly, a change in location of the county infirmary has been left to other Constitutional provisions, and to the legislature.

There is neither a constitutional nor statutory requirement that a change in the location of the county infirmary shall require a majority vote of the electors. Unless the board of supervisors has that authority, none exists.

Decree should be affirmed. No costs, a public question being involved.

Butzel and Smith, JJ., concurred with Boyles, J.

Carr, C. J. The facts in this case appear from a stipulation into which the parties have entered, exhibits that have been returned to this Court, and admitted or uncontroverted averments in the pleadings. In 1942 defendant county purchased, for use as a county infirmary, a parcel of land in the city of Ludington on which was located a residence referred to as the Gray home. The building was remodeled to adapt it for use and has since been devoted to the purposes for which it was acquired. At the same time that the Mason county site for the infirmary was purchased, land comprising the present poor farm was obtained and is now being used for that purpose.

Under date of September 20, 1952, the board of supervisors of Mason county adopted a resolution for submission to the electors of the question as to whether the sum of $165,000 should be raised by a bond issue to construct and equip a new infirmary. Said resolution referred to the building then in use as inadequate, but contained no suggestion that the site was open to objection. The resolution was silent insofar as a change in location of the infirmary was concerned. It appears from the record in the case that the electors authorized the issuance of the bonds

for the purpose indicated. Thereafter the defendant city of Scottville offered to convey to the county as a site for the infirmary a parcel of land in that municipality. Said parcel was a portion of a larger tract previously conveyed to Scottville for use as a public park and for athletic purposes. The board of supervisors of the county voted to accept the offer. Thereupon the plaintiff, a voluntary association composed of electors and taxpayers, brought suit to enjoin the removal of the infirmary from Ludington to the proposed new site. A hearing before the trial court resulted in a decree adverse to the claims of plaintiff, and it has appealed to this Court.

The principal question in the case has reference to the power of the board of supervisors to take the contemplated action in view of the facts involved as disclosed by the record before us. Counsel for defendants in their brief state the question as follows:

"Does the Mason county board of supervisors have the authority to determine to erect a county infirmary at a new location under the facts of this case, the county already maintaining an infirmary in the former Gray home?"

The question presented is one of statutory construction. As an administrative body the board of supervisors has no inherent powers. The present State Constitution (1908), art 8, § 7, in providing for the establishing of said board, declares that it shall have "such powers as shall be prescribed by law." A like provision was contained in the Constitution of 1850, art 10, § 6.

The general law providing for the support of poor persons* declares in chapter 2, § 6 (CL 1948, § 402.6 [Stat Ann 1950 Rev § 16.147]) that:

"The board of supervisors of any county in this State in which a county infirmary is not already erected, may, at any annual or special meeting thereof, determine to erect such a house for the reception of the poor of their county; and upon filing such determination with the clerk of the county, they may direct the superintendents of the poor of such county to purchase 1 or more tracts of land, not exceeding 320 acres, and to erect thereon 1 or more suitable buildings for the purpose aforesaid."

It will be noted that the authority conferred on the board of supervisors by the above provision is limited to counties "in which a county infirmary is not already erected." It is clearly implied that the legislature had in mind that it was granting administrative authority rather than powers of local legislative character. It is consistent with the provisions of CL 1948, § 46.11 (Stat Ann 1953 Cum Supp § 5.331) which, insofar as material here, reads as follows:

"The said several boards of supervisors shall have power and they are hereby authorized at any meeting thereof lawfully held:

"First, To purchase for the use of the county any real estate necessary for the erection of buildings for the support of the poor of such county, and for a farm to be used in connection therewith;

"Second, To purchase any real estate necessary for the site of any court house, jail, clerk's office, or any other county building in such county;

"Third, To fix upon and determine the site of any such building, if not previously located."

---

* PA 1925, No 146, as amended (CL 1948, § 401.1 et seq., as amended [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 16.121 et seq.]).

. It may be noted that this section was amended by PA 1955, No 108, which was given immediate effect and approved June 3, 1955, by adding thereto an eighteenth subdivision. Said amendment is not pertinent to any issue in this case.

It is urged that the limitation expressed in the third subdivision, above quoted, should be construed as applicable only to the buildings mentioned in the second subdivision to the exclusion of those referred to in the first. However, if the legislature had so intended we think express reference would have been made to indicate such intent, or the second and third subdivisions would have been combined. Applying general principles of statutory construction, it is a fair conclusion that the legislature had in mind the buildings previously mentioned in the *section,* and, hence, to grant power to the board of supervisors to fix the site of the county infirmary and of the other buildings named *if not previously located.* Such interpretation is consistent with the statutory provision first above quoted (CL 1948, § 402.6 [Stat Ann 1950 Rev § 16.147]). The specific provision in the general law relating to the care of poor persons clearly indicates the legislative intent, and the statute defining the powers of the board of supervisors indicates a like purpose to restrict the administrative authority granted, as a matter of public policy, with reference not only to infirmaries but other public buildings as well.

The principle has been repeatedly recognized that an express grant of power to administrative officers, boards or commissions, is subject to a strict interpretation. Mechem, Public Offices and Officers, § 511. In accord with such principle, it is said in 67 CJS, Officers, § 107, p 378, that:

"The power and authority to be exercised by boards or commissions must be conferred by clear and un-

mistakable language, since a doubtful power does not exist."

Of like import is the decision of this Court in *Township of Lake* v. *Millar*, 257 Mich 135, in which it was held that the defendant drain commissioner had undertaken to act without jurisdiction. In reaching such conclusion, it was said (p 142):

"The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority."

On behalf of defendants attention is directed to the fact that the provision of the law relative to the care of indigent persons above quoted (CL 1948, § 402.6 [Stat Ann 1950 Rev § 16.147]) limits the authority of the board of supervisors to instances "in which a county infirmary is not already erected." Emphasis is placed on the use of the word "erected," it being urged in effect that the term necessarily imports the construction of a building for use as a county infirmary. The argument carries with it the assumption that a remodeling of an existing structure may not be regarded as within the scope of the provision. In other words, it is claimed that remodeling is not the equivalent of erecting, building, or constructing. While the contrary view is not unsupported by authority, we think it unnecessary to discuss this angle of the situation.

The question before us relates to the intent of the legislature in the enactment of the statutes here involved. The word "erected" may in a proper context be construed to mean built or constructed. Having in mind the purpose of the legislature in the enactment of the statutes above quoted, we think it obvious that such restricted meaning was not intended. A fairer construction is that the legislature deemed it proper to withhold from the board of su-

pervisors the power to change the site of a county infirmary in an instance where such infirmary has been previously established. In the case at bar there is no question but that the county of Mason, pursuant to action of its board of supervisors, did in 1942 establish the convalescent home or infirmary at a definite location in the city of Ludington. It purchased a site and remodeled the building thereon to adapt it for the contemplated use. That use has continued to the present time. On the same date a farm was acquired to be used in connection with the infirmary, the precise location of said farm not appearing in this record or in the exhibits returned here.

If "erected" means "established" the situation presented here is subject to the restrictive clause of the statute. In determining the legislative intent it must be borne in mind that the mere erection or construction of a building is not sufficient to furnish a county with an infirmary. Such structure must be properly equipped for the purposes for which it is designed. Facilities must be supplied to the end that inmates in such institutions may receive proper care. In 1942 the defendant county did more than to provide a building for the infirmary. It equipped that building and established it as the type of institution authorized by statute.

That the word "erected" may be construed as "established" is recognized by leading lexicographers. Anderson's Dictionary of Law; Webster's New International Dictionary; New Century Dictionary. In *Port Huron & Northwestern Railway Company* v. *Richards,* 90 Mich 577, suit was brought on a written instrument executed by defendant whereby he undertook to pay plaintiff the sum of $500 when plaintiff completed the construction of its railway to the village of Port Austin and "have erected" a station for passengers and freight. It appears that the

plaintiff company had constructed a building at the place designated for the station, and it claimed that it had thereby complied with its agreement. However, the said building had not been established as a station, and the trial court directed a verdict in favor of the defendant. In approving such action, this Court said (p 579):

"The agreement contemplated that facilities should be furnished, not only for the accommodation of passengers, but for the reception and shipment of freight. This involved more than a mere place of shelter. 'And have erected a regular station' means more than the erection of a station-house. The word 'erect' may mean 'to build,' or it may mean 'to set up' or 'found' or 'establish' or 'institute,' according to the context. In the connection here used, it means 'to set up,' 'to establish.'"

While the case involved the interpretation of a contract, we think like principles are applicable in construing a statute. In either situation the ultimate question is one of intent to be determined in the light of what is said and the real purpose to be accomplished. The language, above quoted, from the opinion of the Court in the case cited is applicable in the instant suit.

The earlier decision in *Kiefer* v. *German American Seminary of the City of Detroit*, 46 Mich 636, is also in point. In 1861 the legislature of the State granted to defendant seminary 25,000 acres of so-called State swamp lands to aid defendant in "erecting" buildings for its use. The act* contained a proviso that in the event the seminary "shall fail to erect buildings, in pursuance of the terms of the lease or grant made by the city of Detroit of land to said seminary, and within the time therein mentioned," the grant should be forfeited. The legislature later

---

* Laws 1861, No 175, amended by Laws 1863, No 49,—Reporter.

required that the trustees of the seminary execute a bond to the people of the State in the sum of $25,000, conditioned that the proceeds of the sales of the lands should be applied to the purposes contemplated. The plaintiffs in the case were the sureties on said bonds. The lands granted, or some of them at least, were sold but instead of erecting buildings the defendant seminary, as a result of consolidating with another educational institution, received a building worth several thousand dollars, to which building a substantial addition was later made. The plaintiffs brought suit in equity for an accounting and to enjoin the defendant from making any use of the moneys received from the sale of swamp lands other than in the erection of buildings. The trial court entered a decree in favor of the plaintiffs. This Court, in an opinion written by Justice COOLEY, concluded that the purpose of the State grant had been substantially complied with and that, in consequence, defendant had not acted improperly.

In deciding the case cited, it was recognized that a technical construction of the grant would require the moneys realized from the sale of the lands to be applied to the erection of buildings. The Court, however, did not feel impelled to give such construction. While the defendant had not used the funds derived by it from the sale of the lands granted to construct its buildings, it had accomplished an equivalent result. The decision is authority for the proposition that the word "erecting" does not necessarily require the building of structures in order to accomplish the end in view. Whether the result contemplated has been accomplished is the question at issue. Applying the line of reasoning of the decision to the facts in the case at bar we think the conclusion cannot be avoided that while the county of Mason did not construct a new building in Ludington to be used for the purposes of an infirmary, nonetheless

it actually *established* such institution in the manner above indicated. See, also, *Tom* v. *Board of County Com'rs of Lincoln County,* 43 NM 292 (92 P2d 167); *State, ex rel. Davis,* v. *Barber,* 139 Fla 706 (190 So 809).

Counsel for defendants cite *Plummer* v. *Kennedy,* 72 Mich 295, as bearing on the question of the authority of a board of supervisors with reference to the rebuilding of a county infirmary. In that case the building was located on the "county farm." It does not appear that any change in site was involved. The precise question at issue was the authority of the board to employ agents to handle details of the work. The decision is not in point in the instant controversy.

We think the legislative intent is clearly expressed in the statutory provisions above quoted. In accordance therewith the administrative power to change the site of a county infirmary, previously established, is withheld from the board of supervisors. No other conclusion can be reached without ignoring the express provision limiting the authority of said board. With the wisdom or policy thereof courts are not concerned. Rather, the statutes must be construed as enacted, in the light of the purpose to be accomplished and giving due and proper meaning to all provisions. As said in *MacQueen* v. *City Commission of City of Port Huron,* 194 Mich 328, 342:

"It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction, or attempted interpretation to vary such meaning."

The above language was quoted with approval in the recent decision in *Nordman* v. *Calhoun,* 332 Mich 460, 465.

In *City of Grand Rapids* v. *Crocker*, 219 Mich 178, 182, 183, this Court stated the general rule of statutory construction as follows:

"There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in the statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole."

Among decisions of like import are: *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich 225; *Staiger* v. *Liquor Control Commission,* 336 Mich 630. In the last case cited it was said (p 633):

"It is not the province of this Court to alter or change the clear, distinct and unequivocal wording of a legislative enactment."

In the case at bar there is no claim that the present site of the county infirmary is not a proper one. As above noted, the resolution of the board of supervisors submitting the question of issuing bonds to raise money for the construction of an infirmary did not aver any lack of suitability as to the existing site, nor did it set forth any intent to procure a site in another municipality. It appears also from the stipulation of facts that the State department of welfare was asked for an opinion as to the com-

parative suitability of the Ludington and Scottville sites, and replied that it found no objection to either. Presumably the expression of opinion had reference to the physical aspects of the sites rather than to any legal questions involved. It is fairly apparent from the record, considered in its entirety, that the proposed removal of the infirmary from Ludington to Scottville is not sought because the present site is for any reason an improper one. It has been used since acquired in 1942.

No question is here involved as to the legality of the establishment of the infirmary at its present location. The plaintiff recognizes the validity thereof and for obvious reasons the defendants are not in position to raise any question in that regard. Apparently said action when taken was acquiesced in by all parties concerned. It is not subject to challenge in this case. The situation presented is that members of the board of supervisors wish to remove the infirmary to Scottville and locate it on the land donated by that city. The question is, as stated at the outset, whether the board of supervisors is by statute granted such authority. For the reasons above set forth we think that the board, under the present statutes pertaining to the matter, does not have the power claimed by it. If it is deemed desirable that the right to change such site after it has been previously established should be vested in the board, the matter of granting such power rests with the legislature and not with the courts. As the statutes now stand they are clearly inconsistent with such authority.

The determination of the primary question involved renders it unnecessary to consider other issues raised by the parties to the case. The decree from which the appeal has been taken is reversed, and a decree will enter in this Court in accordance

herewith. Inasmuch as questions of statutory construction are involved, no costs are allowed.

Sharpe, Reid, Dethmers and Kelly, JJ., concurred with Carr, C. J.