COUNTY ROAD ASSOCIATION OF MICHIGAN v STATE
HIGHWAY COMMISSION

1. Constitutional Law—Counties—State Treasurer—Audits—
Statutes.

The constitution requires a specific grant of power by the Legislature to any governmental entity seeking to audit another entity, and the state treasurer is the sole governmental unit given the duty to formulate a uniform system of accounts for counties and the responsibility to audit those accounts (Const 1963, art 9, § 21; MCLA 21.45; MSA 3.595).

2. Highways—Counties—State Highway Commission—County
Road Commissions—State Treasurer—Motor Vehicle Highway Fund—Audits—Statutes.

The duty of the State Highway Commission to account for the expenditure of motor vehicle highway funds requires it to be only a clearing house for the annual reports of the county road commissions, and any auditing of the expenditure of such funds by county road commissions is to be done by the state treasurer (MCLA 224.27, 247.651 et seq.; MSA 9.127, 9.1097[1] et seq.).

3. Highways—Motor Vehicle Highway Fund—Counties—State
Highway Commission—Statutes.

The motor vehicle highway fund is established as a separate fund in the state treasury, and monies to counties and municipalities are transferred directly from that fund; the State Highway Commission has no general supervisory power over highway fund recipients, and its only duty in connection with distributions to counties and municipalities is that of computing the amounts to be given each recipient in connection with state trunk line highways (MCLA 247.660; MSA 9.1097[10]).

Appeal from Ingham, Thomas L. Brown, J. Submitted January 14, 1976, at Lansing. (Docket Nos. 22456, 22457.) Decided April 5, 1976.

References for Points in Headnotes
[1] 72 Am Jur 2d, States, Territories and Dependencies §§ 64, 65.
[2, 3] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 122–129.

Complaint by the County Road Association of Michigan, the Oakland County Road Commission, W. W. Intermill, J. Charles Raap, Mark Jenema, G. Harry Jacox, and Raymond L. Roch against the State Highway Commission for an injunction to prevent the State Highway Commission from conducting audits of county road commissions. Preliminary injunction granted and defendants motion for summary judgment denied. Defendant State Highway Commission appeals by leave granted. Affirmed and remanded for entry of a permanent injunction.

*Downs & Edwards,* for plaintiff County Road Association of Michigan and the individually named plaintiffs, and L. W. McEntee, General Counsel, Oakland County Road Commission, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Janis Meija,* Assistants Attorney General, for defendant.

Before: N. J. KAUFMAN, P. J., and T. M. BURNS and M. F. CAVANAGH, JJ.

N. J. KAUFMAN, J. Defendant State Highway Commission filed this interlocutory appeal, by leave granted, of two Ingham County Circuit Court orders, one granting plaintiffs' request for a preliminary injunction and the other denying defendant's motion for summary judgment.

The catalyst for this litigation was an attempt by defendant to conduct an "Act 51 audit" of the plaintiff Oakland County Road Commission. Act 51, 1951 PA 51; MCLA 247.651 *et seq.;* MSA 9.1097(1) *et seq., inter alia,* created the motor

vehicle highway fund and established a pattern for the distribution and use of monies collected. At the time the audit was attempted, the act provided that the fund be apportioned as follows:

"(a) 44.5% thereof to the department of state highways, (b) 35.7% thereof to the several county road commissions of the state, and (c) 19.8% thereof to the incorporated cities and villages of the state".

The act prescribes formulas for determining the amount to be allocated to each county, city and village. See MCLA 247.660a; MSA 9.1097(10b), MCLA 247.662; MSA 9.1097(12), MCLA 247.663; MSA 9.1097(13). It also explicitly details the purposes for which the money may be spent and the amounts to be expended for each purpose by counties, MCLA 247.662; MSA 9.1097(12), and by cities and villages, MCLA 247.663; MSA 9.1097(13). The failure by any county road commission, city or village to apply the funds as prescribed shall result in the forfeiture of all fund allocation for one year. MCLA 247.666; MSA 9.1097(16).

Defendant adopted the Act 51 audit as a method of insuring that the funds are expended as the act requires. Since 1971, some 21 audits have been conducted on a random, "spot-check" basis. Plaintiff Oakland County Road Commission objected to such an audit being conducted. The commission recognized the defendant's right of access to its books and records but objected to the formal audit.

In resisting the audit, the commission raised three objections. First, it argued that within the past year, it had been audited by both a private CPA firm and the Michigan Department of Treasury, and that the additional audit proposed by the defendant constituted an unnecessary interference with the day-to-day operations of the commission.

Second, the commission contended that the defendant and its individual auditors were using the Act 51 audits as a financial blackmail tool to exert administrative control over the local commissions beyond that authorized by the Constitution of 1963 and the various legislative enactments. The commission's final argument, and the one which concerns us most, was that the defendant was not authorized to conduct audits of local commissions. That authority, plaintiff claimed, is vested solely in the Treasury Department and the Auditor General.

When the defendant insisted on its right to conduct the proposed audit, the Oakland County Road Commission, joined by the County Road Association of Michigan and the various individual plaintiffs, filed suit in Ingham County Circuit Court on October 24, 1974. The complaint requested both preliminary and permanent "restraining orders" against further Act 51 audits. In addition to the objections already raised by the Oakland County Road Commission, the complaint alleged that the audits were an illegal waste of tax money.

In granting plaintiffs' request for a preliminary injunction, the court indicated his initial impression that the law probably required audits of this type to be conducted by independent auditors employed by the Treasury Department or Auditor General. He also indicated his feeling that there was some merit to the plaintiffs' charge that the defendant was using the Act 51 audits to coerce the county road commissions into accepting its policy pronouncements since the alternative would be a refusal by the defendant to furnish the local commissions their share of the gas and weight taxes.

Having concluded that the plaintiffs appeared to possess the superior equities, the trial judge then went on to consider the question of possible irreparable injuries. He concluded that the defendant would not suffer any irreparable injury if the preliminary injunction were granted since it could always request the Treasury Department or the Auditor General to conduct the audit. On the other hand, he reasoned that the plaintiffs would suffer irreparable injury if the local commissions remained subject to the type of coercive audits alleged in their complaints.

Our granting of defendant's motion for interlocutory review places this action in an interesting posture. To decide the validity of the preliminary injunction, we must determine whether defendant is empowered to conduct the challenged audits. In doing so we will, perforce, be rendering an ultimate disposition of the case. We feel that to now reverse our decision to grant the appeal would result in an unnecessary delay in the proceedings. We, therefore, proceed to determine the legality of the "Act 51 audit".

Explicit statutory authority for the audits does not exist. The parties' arguments, thus, are focused on whether statutory and case law give defendant the power to audit by implication.

Defendant argues that authority is created by implication from a number of sources. Defendant cites MCLA 247.664; MSA 9.1097(14), as the foundation of its argument. That statute provides in relevant part:

"In addition to all other requirements provided by law, the * * * duties hereinafter specified, concerning the administration and use of funds allocated by this act, *are hereby imposed upon the state highway commissioner* * * * .

* * *

"(c) All county road commissions * * * shall keep accurate and uniform records on all road and street work and funds, *and shall annually report to the state highway commissioner at the time, in the manner and on forms prescribed by him* * * * *the receipts and disbursements of road and street funds.*

* * *

"(e) The state highway commissioner shall report annually to the governor and the state legislature, * * * *and in such report he shall give an account of all expenditures of funds allocated from the motor vehicle highway fund to the* * * * *county road commissions* * * *.*

* * *

"(g) All payments and returns of funds provided for in this act shall be withheld from * * * any county road commission * * * for failure to comply with any of the requirements of this act, and such withholding shall continue for the period of noncompliance." (Emphasis supplied.)[1]

The defendant argues that, in order to properly "account" to the Governor and Legislature, as the statute requires, it must audit the local commissions. Having stated the premise that audits are necessary if the defendant is to satisfy its duty of accounting to the Governor and Legislature, reliance is next placed upon MCLA 247.807(n); MSA 9.216(7)(n), which states that the defendant has the power:

"[t]o do anything necessary and proper to carry out the duties imposed on it by the constitution and such other duties as may be imposed by law."

---

[1] The office of state highway commissioner was abolished by 1964 PA 286 and all the powers and duties of that office were transferred to defendant state highway commission. MCLA 247.802; MSA 9.216(2).

In addition to the statutory language, defendant contends that legislative intent to allow Act 51 audits is manifested by the Legislature's failure to object to the audits performed since 1971. Defendant also utilizes an affidavit which states that, beginning in fiscal 1973, the defendant requested and received from the Legislature funds for Act 51 audits and authorization for an additional auditor position with designated responsibility for local government audits. The plaintiffs do not dispute the affidavit, but they do point out that the appropriation acts themselves contain no overt indication of such an appropriation.[2]

Each party cites *Coffman v State Board of Examiners in Optometry,* 331 Mich 582; 50 NW2d 322 (1951), as support for its position. Defendant contends that the power to audit is a necessary extension of its supervisory role over the highway fund and over the recipients of monies from the fund. Defendant's theory is supported by language in the *Coffman* opinion which provides:

" 'In determining whether a board or commission has a certain power, the authority given should be liberally construed in light of the purposes for which it was created and that which is incidentally necessary to a full exposition of the legislative intent should be upheld as being germane to the law.' " 331 Mich at 590, quoting 42 Am Jur, Public Administrative Law, § 26, pp 316–318.

Plaintiffs respond that defendant does not have the supervisory power from which the power to audit may be implied and, in any case,

" 'powers should not be extended by implication be-

---

[2] *See* 1973 PA 124 and 1974 PA 235, the appropriation acts for the highway commission.

yond what may be necessary for their just and reasonable execution.' " *Id.*

Plaintiffs argue further that there is a presumption against the implied extension of agency powers, *Sebewaing Industries Inc v Village of Sebewaing,* 337 Mich 530; 60 NW2d 444 (1953), and that an agency cannot create powers for itself merely by assuming them. *Mason County Civic Research Council v Mason County,* 343 Mich 313; 72 NW2d 292 (1955).

The foundation of the plaintiffs' argument is that the defendant has never expressly been given control over the motor vehicle highway fund or the authority to audit local government expenditures of fund monies. The control argument is designed to defeat the defendant's argument that the power to audit is necessarily implied from its statutory duties. The plaintiffs argue that the rule of *Coffman* and other similar cases applies only when an agency has general supervisory powers. They reason that since, under the motor vehicle highway fund act, the defendant and the governmental plaintiffs share a common status as recipients of fund money, there is no basis for contending that the defendant should have power over its fellow recipients.

After pointing out that the power to audit is not expressly granted to the defendant, the plaintiffs go on to note that the audit power is expressly granted to the Treasury Department. The power was originally vested in the elected Auditor General by MCLA 21.45; MSA 3.595:

"The auditor general shall hereafter be the supervisor of the accounts of * * * all county offices. He shall have the power, and he is hereby directed, to examine or cause to be examined, the books, accounts and finan-

cial affairs * * * of each county office * * * . Such examination shall be made at least once in each year, or as often as in the judgment of the auditor general it shall be for the public good."

These powers were then transferred to the Treasury Department by MCLA 16.180; MSA 3.29(80).

The plaintiffs argue that, since the power to conduct Act 51 audits is solely, though not by name, given to the Treasury Department, it cannot be said that it was impliedly granted to the defendant. It, thus, cannot be argued that such an implication is necessary since the defendant can always call upon the Treasury Department to conduct such audits.

In response, the defendant argues that the Treasury Department is spread too thin to successfully audit county road commissions and that it conducts general audits of whole county governments and does not focus to the extent usually necessary to uncover improper expenditures of fund money. Historically, the defendant notes, whenever the Treasury Department has uncovered an indication of misspent highway funds, it has merely referred the matter to the defendant for an intensive audit.

From a review of the authority cited by the parties and an examination of the relevant statutory provisions, we find plaintiffs' position to be the more cogent. We, therefore, hold that defendant is without authority to conduct Act 51 audits. We base our holding on two findings: (1) that Michigan law requires a more explicit grant of the power to audit than defendant alleges as its authority here and (2) that defendant does not have general supervisory control over the motor vehicle fund and its recipients sufficient to provide the authority to conduct an Act 51 audit.

First, in providing for accounting and auditing

for local governments, Const 1963, art 9, § 21 requires specific grants of power to perform public audits. That section mandates:

"The legislature shall provide by law for the annual accounting for all public moneys, state and local, and may provide by law for interim accounting.

"The legislature shall provide by law for the mainte-nance of uniform accounting systems by units of local government and the *auditing of county accounts by competent state authority and other units of govern-ment as provided by law.*" (Emphasis supplied.)

We read this provision as requiring a specific grant of power by the Legislature to any govern-mental entity seeking to audit another entity. The Legislature has so provided in a significant num-ber of instances. See *e.g.* MCLA 46.6; MSA 5.326 (examination of county treasurer accounts by the board of supervisors), MCLA 46.63; MSA 5.573 (finance committee audits for counties with popula-tion exceeding 75,000), MCLA 42.30; MSA 5.46(30) (annual audit by independent auditor required for all charter townships), MCLA 124.505; MSA 5.4088(5) (accounting between units under the ur-ban cooperation act), MCLA 141.421; MSA 5.3228(21) (uniform charts of accounts by state treasurer for all governmental units), MCLA 722.230; MSA 25.445(30) (explicit grant of author-ity to crippled children commission to audit books of treatment facilities).

Specifically, as plaintiffs note, the Treasurer, as successor to the duties of Auditor General, is the sole governmental unit given the duty to formu-late a uniform system of accounts for counties and responsibility to audit those accounts. MCLA 21.45; MSA 3.595. The fact that the Treasurer has asked defendant to conduct some of these audits

does not give defendant the power to do so on its own. The Treasurer appointed defendant under its express, correlative power to appoint such auditors as may be necessary. *Id.*

Two other enactments indicate the Treasurer's exclusivity of auditing power over counties and their commissions. MCLA 750.492; MSA 28.760 provides that while county, city or township records shall be open to examination by the public, the only individual allowed to remove the books for a full audit is the state Treasurer. More significant to our purposes, and indicative of legislative intent, is 1975 PA 199, an amendment to the general highway law. Prior to this act, § 25 of the general highway law, MCLA 224.25; MSA 9.25, required boards of county road commissioners to keep detailed records of "all money received and disbursed" and of "all work done". All monies from the motor vehicle highway fund must be kept in a separate account. MCLA 247.662(g); MSA 9.1097(12)(g). Pursuant to MCLA 247.665; MSA 9.1097(15).

"On or before the first day of April of each year, each county road commission and the clerk of each incorporated city and village shall file with the state highway commissioner and the clerk of the county, on forms to be provided by the state highway commissioner, a report showing the disposition of funds appropriated, apportioned or allocated under this act, to such county and incorporated city and village."

The enactment of 1975 PA 199, MCLA 224.26–224.32; MSA 9.126–9.129(12), makes it clear that defendant's duty to account for expenditure of funds requires it to be no more than a clearing house for these reports and that any auditing of county road commissions is to be done by the

Treasurer. Section 27, MCLA 224.27; MSA 9.127, mandates an annual audit of county road commissions is to be done by the Treasurer. Section 27, MCLA 224.27; MSA 9.127, mandates an annual audit of county road commission books by an independent certified public accountant. If no audit is made, "the *department of treasury* shall conduct the audit or cause it to be conducted by a certified public accountant". (Emphasis supplied.)[3] Any statutory violations disclosed by the audit shall be reported to the Attorney General, not to defendant. MCLA 224.30; MSA 9.129(10). Further, the new act stresses the constitutional requirement that authority to audit be expressly provided in stating:

"Nothing in this act shall increase or decrease the powers, duties, and functions, including the authority to audit, of any state agency, department, board or commission relative to the boards of county road commissions *as provided* by any other law." MCLA 224.27; MSA 9.127. (Emphasis supplied.)

Further evidence of the Legislature's intent that defendant not be given authority to audit county road commissions is found in its refusal to pass three bills containing an express grant of this power. See 1973 SB 357, 1974 SB 707, 1975 SB 707.

We base our second finding, that defendant has no general supervisory power over highway fund recipients, on a reading of the statutory provisions regarding distribution of monies from the fund. The fund is established as a separate fund in the state treasury, MCLA 247.660; MSA 9.1097(10). Monies to counties and municipalities are transfer-

---

[3] *See also* MCLA 247.660h(4); MSA 9.1097(10i)(4), which requires the *auditor general* to audit the general transportation fund, one created within the motor vehicle highway fund for purposes of urban transportation.

red directly from this fund, not distributed by defendant. Defendant is but one of the recipients. Defendant's sole job in connection with distributions to counties and municipalities is a ministerial one, that of computing the amounts to be given to each recipient in connection with state trunk line highways. This duty entails only a mathematical calculation based on a statutory formula. Defendant's only direct control over counties and municipalities concerns joint projects for widening and repair of state trunk line highways. Such control deals with construction, not auditing. See MCLA 247.651d; MSA 9.1097(1d). Other monies from the fund are transferred directly by the Department of Treasury pursuant to established, statutory guidelines.

For the reasons enunciated above, we, therefore, affirm and remand to the trial court for entry of a permanent injunction against defendant's future performance of any "Act 51 audits". No costs.