# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 1, 2009

134667-69
134671
134673-74
134676-77

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

_____

In re APPLICATION OF DETROIT EDISON
COMPANY
_____

ATTORNEY GENERAL,
      Appellant,

v

                                SC: 134667
                                COA: 259845

MICHIGAN PUBLIC SERVICE COMMISSION,
DETROIT EDISON COMPANY, and
CONSTELLATION NEWENERGY, INC.,
      Appellees.
_____/

MPSC: U-13808

_____

In re APPLICATION OF DETROIT EDISON
COMPANY
_____

DETROIT EDISON COMPANY,
      Appellee,

v

                                SC: 134668
                                COA: 264099

MICHIGAN PUBLIC SERVICE COMMISSION,
ASSOCIATION OF BUSINESSES ADVOCATING
TARIFF EQUITY, MICHIGAN ENVIRONMENTAL
COUNCIL, PUBLIC INTEREST RESEARCH
GROUP IN MICHIGAN, and CONSTELLATION
NEWENERGY, INC.,
      Appellees,
and

MPSC: U-13808

ATTORNEY GENERAL,
   Appellant.

_____/


_____

In re APPLICATION OF DETROIT EDISON
COMPANY

_____

ATTORNEY GENERAL,
   Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,
DETROIT EDISON COMPANY, ENERGY
MICHIGAN, INC., CONSTELLATION
NEWENERGY, INC., and ASSOCIATION OF
BUSINESSES ADVOCATING TARIFF EQUITY,
   Appellees.

_____/

                SC: 134669
                COA: 264191
                MPSC: U-13808

_____

In re APPLICATION OF DETROIT EDISON
COMPANY

_____

DETROIT EDISON COMPANY,
   Appellee,

v

ASSOCIATION OF BUSINESSES ADVOCATING
TARIFF EQUITY, MICHIGAN ENVIRONMENTAL
COUNCIL, PUBLIC INTEREST RESEARCH
GROUP IN MICHIGAN, CONSTELLATION
NEWENERGY, INC., and ATTORNEY GENERAL,
   Appellees,
and

MICHIGAN PUBLIC SERVICE COMMISSION,
   Appellant.

_____/

                SC: 134671
                COA: 264099
                MPSC: U-13808

_____

In re APPLICATION OF DETROIT EDISON

COMPANY

_____

DETROIT EDISON COMPANY,
        Appellee,

v

MICHIGAN PUBLIC SERVICE COMMISSION,
ASSOCIATION OF BUSINESSES ADVOCATING
TARIFF EQUITY, CONSTELLATION
NEWENERGY, INC., and ATTORNEY GENERAL,
        Appellees,
and

MICHIGAN ENVIRONMENTAL COUNCIL, and
PUBLIC INTEREST RESEARCH GROUP IN
MICHIGAN,
        Appellants.

_____/


_____

In re APPLICATION OF DETROIT EDISON
COMPANY

_____

MICHIGAN ENVIRONMENTAL COUNCIL and
PUBLIC INTEREST RESEARCH GROUP IN
MICHIGAN,
        Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION,
DETROIT EDISON COMPANY, and
CONSTELLATION NEWENERGY, INC.,
        Appellees.

_____/


_____

In re APPLICATION OF DETROIT EDISON
COMPANY

_____

SC: 134673
COA: 264099
MPSC: U-13808

SC: 134674
COA: 264131
MPSC: U-13808

DETROIT EDISON COMPANY,
            Appellee,

v

                                                                    SC: 134676
                                                                    COA: 264099
                                                                    MPSC: U-13808

MICHIGAN PUBLIC SERVICE COMMISSION,
MICHIGAN ENVIRONMENTAL COUNCIL,
PUBLIC INTEREST RESEARCH GROUP IN
MICHIGAN, CONSTELLATION NEWENERGY,
INC., and ATTORNEY GENERAL,
            Appellees,
and

ASSOCIATION OF BUSINESSES ADVOCATING
TARIFF EQUITY,

            Appellant.
_____/


_____


In re APPLICATION OF DETROIT EDISON
COMPANY
_____


ASSOCIATION OF BUSINESSES ADVOCATING
TARIFF EQUITY,
            Appellant,

v                                                                   SC: 134677
                                                                    COA: 264156
                                                                    MPSC: U-13808


MICHIGAN PUBLIC SERVICE COMMISSION,
DETROIT EDISON COMPANY, ENERGY
MICHIGAN, INC., CONSTELLATION
NEWENERGY, INC., and ATTORNEY GENERAL,
            Appellees.
_____/


        On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we REVERSE the July 3, 2007 judgment of the Court of Appeals on the issue of Detroit Edison Company (Edison) recovering a portion of the control premium that DTE Energy paid to acquire MCN Energy, and we AFFIRM the Court of Appeals judgment that "transmission costs" may be recovered through a power supply cost recovery (PSCR) clause on different grounds. The Public Service Commission (PSC) excluded the control premium costs from

Edison's general rate. On appeal, Edison bore the burden "to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable." MCL 462.26(8); see MCL 460.4 (adopting MCL 462.26 standards). Judicial review of administrative agency decisions must "not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views." *MERC v Detroit Symphony Orchestra*, 393 Mich 116, 124 (1974); see also *In re Payne*, 444 Mich 679, 692-693 (1994) ("When reviewing the decision of an administrative agency for substantial evidence, a court should accept the agency's findings of fact if they are supported by that quantum of evidence. A court will not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record."). The Court of Appeals did not give due deference to the PSC's findings of fact and Edison failed to meet its burden. Accordingly, we reinstate the PSC's decision excluding the control premium costs from Edison's general rates. The Court of Appeals also held that "[p]ayments made by Edison for transmission costs . . . are necessarily 'transportation costs,' and therefore are properly recoverable in a PSCR clause." *In re Detroit Edison Application*, 276 Mich App 216, 229 (2007). Electric utilities can recover two types of power supply costs through a PSCR clause: (1) "booked costs, including transportation costs, reclamation costs, and disposal and reprocessing costs, of fuel burned by the utility for electric generation;" or (2) "booked costs of purchased and net interchanged power transactions." MCL 460.6j(1)(a). The Court of Appeals interpretation does not give any meaning to the limitation that the "transportation costs" must be those "of *fuel* burned by the utility for electric generation." (Emphasis added). However, the second clause, "booked costs of purchased and net interchanged power transactions," is a technical phrase that has acquired a "peculiar and appropriate" meaning in the regulation of electric utilities to include "transmission costs" charged by third-parties. MCL 8.3a; see *In re Wisconsin Electric Power Company*, unpublished opinion and order of the Public Service Commission, issued September 16, 2002 (Case No. U-12725) at 16. Accordingly, it "shall be construed and understood according to such peculiar and appropriate meaning," MCL 8.3a, and the PSC did not err in permitting Edison to recover transmission costs through its PSCR clause. The Court of Appeals affirmance of the PSC decision is thus affirmed on this alternate ground.

CORRIGAN, J. (*concurring in part and dissenting in part*).

I respectfully dissent from the order reversing the Court of Appeals and reinstating the decision of the Public Service Commission (PSC) excluding the recovery of the control premium sought by the Detroit Edison Company (Edison) in this general rate case. Although I concur with the Court's decision to affirm the PSC regarding the recovery of transmission costs, and although no one disputes that Edison may attempt to substantiate savings in its next general rate case to recover a portion of the control premium, I write separately because the PSC erred by foreclosing Edison from recovering any part of the control premium paid to acquire MCN Energy Group Inc.

(MCN) in this rate case. In my view, the PSC's decision regarding the control premium was not supported by competent, material, and substantial evidence on the whole record. Accordingly, I would affirm the Court of Appeals decision to reverse the PSC and remand for further proceedings concerning the control premium issue.

On June 20, 2003, Edison, the largest electric utility provider in Michigan, filed an application for a general rate case. The PSC described the subsequent proceedings as "among the most complex cases ever considered." Indeed, the case involved myriad matters, including an increase in Edison's rate schedules, determination of its stranded costs, implementation of its power supply cost recovery clause, and recovery of its control premium. Specifically, Edison sought recovery from its ratepayers for an allocated share of the control premium arising from the acquisition of MCN. According to Edison, its ratepayers benefited financially from the cost savings or synergies that the control premium made possible.

The PSC staff opined that substantial savings to ratepayers resulted from the acquisition and that these synergistic savings justified the pass-through of the acquisition control premium. The hearing referee also essentially determined that Edison's control premium argument was persuasive, stating in relevant part:

> The [hearing referee] finds Detroit Edison's and Staff's position persuasive. The [hearing referee] finds that the savings are real substantial and a direct result of the merger and planning going into the merger which contributed to effectuating the savings which justifies the pass through of the acquisition control premium with one exception, that exception being that the [hearing referee] is persuaded by the arguments of the AG, ABATE, and MEC/PIRGIM that 40 years is too long a period of time to project savings.

> * * *

> The [hearing referee] does recognize concerns raised regarding the ability of Detroit Edison to show these savings in perpetuity or more specifically in this case 40 years into the future. The [hearing referee] agrees that such forecasting calls into play too many variables for such long-term projections including, regulatory practices, electric choice industry restructuring, alternative energy sources, and even the needs of DTE Energy, Detroit Edison, and MCN as a result of the merger. The [hearing referee] further recognizes that the approval in this rate case is limited to those costs and savings actually realized thus far. Detroit Edison in its next rate case will, likewise, be required to substantiate the asserted savings for continuing recovery. At that time, Staff and Intervenors, as in this case, may present challenges to the asserted cost savings.

Nevertheless, the PSC rejected the hearing referee's recommendation to include $46.2 million for the control premium. The PSC reasoned that

> DTE's decision to pay $893 million over the market price of MCN to acquire MCN's assets was not subject to any form of oversight by the Commission and is curious in light of the acknowledgment by a Detroit Edison witness that MCN was "financially distressed" at the time of the merger. The Commission is persuaded that Detroit Edison never adequately explained why it would pay such an enormous premium for a company that was in such poor financial condition. The Commission is without any basis to question either the appropriateness of the merger or the reasonableness of the price paid by DTE to acquire MCN. Moreover, if DTE subsequently sells MCN for a profit, the Commission will likely be powerless to recoup any portion of the sale price for Detroit Edison's ratepayers, and could possibly be asked to raise rates again to cover the cost of lost synergies. Any system that requires ratepayers to endure rate increases for both found and lost synergies is truly dubious.
>
> Additionally, the Commission is skeptical of Detroit Edison's contention that the alleged synergy savings associated with the merger could be expected to last for the immediate future let alone the next 40 years. A significant core function of Detroit Edison—its fossil and nuclear generation groups—"were excluded from the merger transition process" because they "were not impacted by the merger." Detroit Edison even admitted that some of the centralization of activities could have been achieved without the merger.
>
> According to Detroit Edison, much of the value created from the MCN acquisition was in the form of cost reductions realized through combining overlapping functions and internal services. But a significant portion of the labor savings appears to be attributable to early retirements and voluntary resignations, which are not necessarily permanent. Other aspects of the merger produced confusion and customer consternation. A still pending investigation of Detroit Edison's and Mich Con's [Michigan Consolidated Gas Company] efforts to combine their billing systems, which apparently contributed to the incorrect billing of approximately 480,000 Mich Con customers in January 2002, has yet to be resolved. The costs associated with the billing system problems apparently were not included in the calculation of the merger synergies. Still, other savings were derived by considering cost savings on early-terminated contracts without any consideration of the expenses caused by the early termination of such contracts. While Detroit Edison claims that, without the merger, Detroit Edison's O&M expenditures for 2004 would have increased by $84

million, the fact remains that the company's post-merger O&M spending exceeds its pre-merger spending levels by over $100 million. [Citations omitted.]

Disagreeing with the recommendation of the PSC staff and the findings of the hearing referee, the PSC held that "none of the control premium requested by Detroit Edison should be included in Detroit Edison's rates."

The Court of Appeals thereafter reversed the PSC's ruling that Edison may not recover its allocated share of the control premium in a unanimous published opinion. *In re Application of Detroit Edison Co*, 276 Mich App 216 (2007). The Court stated:

> As the PSC staff opined and the hearing referee recommended, we hold that the substantial savings to Edison customers are a direct result of the acquisition of Michigan Consolidated Gas Company (MichCon) and that these synergistic savings fully justify the pass-through of the acquisition control premium. Edison seeks and is entitled to that portion of the control premium that permits Edison to accomplish these synergistic savings. We hold that Edison is clearly entitled to recover its share of the control premium that resulted in these synergistic savings. Like the hearing referee, we reject the arguments of the AG and MEC/PIRGIM in opposition to Edison's rate request regarding the control premium. Of course, the PSC should determine the precise amount of the appropriate recovery and the period over which to amortize Edison's recovery of its portion of this control premium. [*Id*. at 235-236.]

The Court of Appeals further explained that "[t]he PSC's clearly erroneous decision resulted in a reduction of $46.2 million in Edison's revenue requirement for 2004, and a significant reduction of hundreds of millions in the future." *Id*. at 237. Additionally, the Court of Appeals held that Edison must "substantiate savings in its next rate case in order to continue recovering the control premium." *Id*.

In my view, the PSC erred when it foreclosed Edison from recovering any control premium in this general rate case. The PSC possesses only the authority granted by the Legislature. *Consumers Power Co v Pub Service Comm*, 460 Mich 148, 155 (1999). Words and phrases contained in the PSC's enabling statutes must be read in the context of the statutory scheme. *Id*. at 155-156. Moreover, this Court has often stated that any exercise of power by an agency "must be conferred by clear and unmistakable language, since a doubtful power does not exist." *Mason Co Civic Research Council v Mason Co*, 343 Mich 313, 326-327 (1955) (citation and quotation marks omitted). Although MCL 460.6 grants the PSC broad authority over matters pertaining to public utilities, this Court has consistently held that the broad language in MCL 460.6 "serves as an outline of the PSC's jurisdiction, not a grant of specific powers." *Consumers Power Co, supra* at 160.

Here, the PSC's determination that "none of the control premium requested by Detroit Edison should be included in Detroit Edison's rates" has precluded Edison from receiving a control premium recovery in these rates. No one disputes the Court of Appeals holding that Edison may substantiate savings resulting from the control premium in future rate cases. *In re Application of Detroit Edison Co, supra* at 237.[1] Nevertheless, I disagree with the PSC's decision to discount the conclusions of both PSC staff and the hearing referee concerning control premium recovery in this particular rate case.[2] As the Court of Appeals properly observed, "the PSC's decision is not supported by competent, material, and substantial evidence on the whole record." *Id.* at 238.[3]

I also question the PSC's rationale for ignoring the recommendation of the hearing referee and denying Edison any recovery whatsoever of its control premium in this case. After first stating that it had no basis to question the purchase price, the PSC went on to question Edison for "never [having] adequately explained why it would pay such an enormous premium for a company that was in such poor financial condition." But, as the Court of Appeals stated, the record evidence indicated that MCN's market value at the time it was acquired reflected the diminished financial value of the company and that the purchase price was within the range for comparable transactions. *In re Application of Detroit Edison Co, supra* at 238. Thus, the record does not support the PSC's characterization of the amount paid for MCN as being an "enormous premium." The PSC obviously rejected the business judgment of management involved in the acquisition of MCN. As this Court has stated, however, "the PSC's authority to regulate a utility's rates and charges does not include the power to make management decisions." *Consumers Power Co, supra* at 158. Whether the PSC would have made a different management decision concerning the merger is irrelevant to whether Edison can recoup synergies or cost savings reaped by its ratepayers.

Additionally, the PSC expressed skepticism that "the alleged synergy savings associated with the merger could be expected to last for the immediate future let alone the next forty years." Skepticism regarding long term savings is not a valid ground for

---

[1] As counsel for the PSC stated at oral argument: "The Commission ruled on the evidence before it. The Commission did not reject the control premium on the basis that they could not award such a grant."

[2] The control premium recovery sought by Edison was not unprecedented. Indeed, the PSC acknowledged its authority to adjust rates in light of acquisition savings in a previous case, when it stated that "public policy dictates that we allow recovery of and on acquisition adjustments only where ratepayers receive a net benefit from the change in ownership." See order of the PSC, November 23, 2004 (Case No. U-13808), p 46 (citation and question marks omitted).

[3] See Const 1963, art 6, § 28.

denying Edison recovery of the documented net cost savings proven for 2004. Even if the PSC's skepticism regarding long term savings is well-founded, I agree with the PSC staff, the hearing referee, and the Court of Appeals that although Edison's amortization forecast may have been too speculative, Edison is nevertheless entitled to recover the actual savings proven for 2004 in this case and to attempt to substantiate such savings in its next general rate case in order to recover some of the control premium. *In re Application of Detroit Edison Co, supra* at 235-237.

The PSC also noted that Edison's postmerger O & M spending exceeded its premerger spending levels by over $100 million. This statement is irrelevant, given record evidence that Edison's O & M expenses would have been significantly higher if they had not been offset by the merger savings. A rate cannot be created by recognizing reductions in certain costs while ignoring the increases in other costs. *Michigan Consolidated Gas Co v Pub Service Comm*, 389 Mich 624, 633 (1973).

Accordingly, because the Court of Appeals correctly resolved the control premium issue, I dissent from this Court's order of reversal because it allows the PSC to foreclose any recovery sought by Edison concerning its allocated share of the control premium in this case.

MARKMAN, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 1, 2009

0428

_____
Clerk